**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **Deana Pollard Sacks,** | § | |
| *Plaintiff* | § | |
| | § | |
| **vs** | § | **CASE NO. _____** |
| | § | **JURY TRIAL DEMANDED** |
| **Texas Southern University, Ahunanya Anga,** | § | |
| **James Douglas, Fernando Colon-Navarro, Ana** | § | |
| **Otero, and April Walker,** | § | |
| *Defendants* | § | |

<u>Plaintiff's Original Complaint</u>

Professor Sacks is a renowned scholar and tirelessly devoted teacher. She is among the most decorated and published professors at the law school and routinely donates her time to review sessions and after-hours study sessions to help students.

She is also a Caucasian women. Professor Sacks has been passed over for promotions and other opportunities to advance her career that male and non-white faculty routinely obtain. She has even had her title revoked (and the $100,000 compensation associated with it) on the basis of her race, and was made to defend herself from sham complaints orchestrated by harassing faculty members. Professor Sacks has also been passed over for titles that she is qualified for because she is a Caucasian women. And, she is paid less than her male and non-white colleagues, despite superior credentials. On top of that, she is routinely harassed by male and non-white members of the faculty because she is Caucasian and female. She has reported the discriminatory and harassing treatment to the university, and ultimately the EEOC. TMSL and its faculty responded with greater and more pervasive discrimination and harassment.

TMSL boasts of diversity and inclusion, but Professor Sacks has been shown the opposite. The university and its faculty have no excuse for gender and racial bias. Not in this day and age.

## I.    PARTIES

1.      Plaintiff Deana Pollard Sacks is a Caucasian women residing in Houston, Harris County, Texas. Professor Sacks has devoted the last eighteen years of her life to the development of Texas Southern University's Thurgood Marshall School of Law ("TMSL"). Currently she is a full, tenured professor of law.

2.      Defendant Texas Southern University ("TSU") is a coeducational statewide general purpose institution of higher education located in Houston, Harris County, Texas. TSU controls and operates TMSL.  It may be served by serving its President, Dr. Austin Lane, 3100 Cleburne St., Hannah Hall, Suite 220, Houston, Texas 77004, as set forth in the Texas Education Code, Section 106.38.

3.      Defendant Ahunanya Anga is Professor of Law at TMSL. Defendant Anga is being sued in her individual and official capacities. Defendant Anga can be served at her residence or at her office in the law school, Texas Southern University, 3100 Cleburne, Houston, Texas.

4.      Defendant James Douglas is Distinguished Professor of Law at TMSL. Defendant Douglas is being sued in his individual and official capacities. Defendant Douglas can be served at his residence or at his office in the law school, Texas Southern University, 3100 Cleburne, Houston, Texas.

5.      Defendant Fernando Colon-Navarro is Professor of Law and Director of L.L.M. & Immigration Development at TMSL. Defendant Colon-Navarro is being sued in his individual and official capacities. Defendant Colon-Navarro can be served at his residence or at his office in the law school, Texas Southern University, 3100 Cleburne, Houston, Texas.

6.      Defendant Ana Otero is Professor of Law at TMSL. Defendant Otero is being sued in her individual and official capacities. Defendant Otero can be served at her residence or at her office in the law school, Texas Southern University, 3100 Cleburne, Houston, Texas.

7.      Defendant April Walker is Professor of Law at TMSL. Defendant Walker is being sued in her individual and official capacities. Defendant Walker can be served at her residence or at her office in the law school, Texas Southern University, 3100 Cleburne, Houston, Texas.

8.      Defendants Anga, Douglas, Colon, Otero, and Walker (collectively, "Individual Defendants") are, or were during relevant times herein, administrators, directors, or professors of Texas Southern University and/or the Thurgood Marshall School of Law.   The Individual Defendants acted in concert and engaged in hostile, discriminatory, harassing, and/or physically aggressive misconduct in both their individual capacities and their official capacities.   The Individual Defendants are sued in their personal capacities for personal discriminatory and tortious misconduct and are jointly and severally liable therefor, based on a concert of action. The Individual Defendants are also being sued in their official capacities, as they used university processes and procedures to violation Plaintiff's rights, to harass her, and to retaliate against her for filing an EEOC Charge of Discrimination.   TSU is liable for all of its employees' discrimination, harassment, and retaliation, including the defendants' misconduct undertaken in their official capacities, which misconduct was coordinated, concerted, and ratified by each and every other Defendant.

## II.    JURISDICTION AND VENUE

9.      This is a district of proper venue.  Plaintiff is employed by TSU in Harris County, Texas, and many of the discriminatory acts occurred there. TSU has its headquarters and management in Harris County, Texas.

10.     Venue is proper in this district under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas. Venue in Harris County is provided by the Texas Education Code, Section 106.38.

11.     This case is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 29 U.S.C. Section 206(d)(1), and the Equal Pay Act, 29 U.S.C. § 1620.   This Court has jurisdiction concerning the federal claims pursuant to 28 U.S.C. § 1331.

## III.    STATEMENT OF FACTS

### A.     TMSL's history of discrimination in contravention of TSU's Mission

12.     TSU is a HBCU, and the Thurgood Marshall School of Law (TMSL) was established in 1946. The law school's Mission Statement provides that the law school's purpose is "to expand opportunities for the underserved in the legal profession . . . with special emphasis on a historically black heritage and tradition." Instead of furthering its mission, the law school has hired administrators and professors who are unqualified, racist, sexist, and counterproductive to the law students' education and the law school's mission. The students at TMSL do not receive consistent quality instruction as a result, and the law school mission is undermined.

13.     The law school administration regularly fails to follow established law, industry-wide standards, and its own written policies.  The law school regularly fails to make merit-based employment, promotion, and compensation decisions, and allows and ratifies racial and gender discrimination, harassment, and retaliation against persons who complain.  The law school pays higher compensation and provides much better conditions of employment for male and non-white employees to the detriment of the law students, the law school's reputation, and the law school's mission.

14.     The law school is a hotbed of racial and gender discrimination and harassment, creating a hostile and dysfunctional educational and employment environment.   There is pronounced anti-white sentiment among many of the professors who are TMSL graduates, and certain other non-white professors, and the law school and TSU administration regularly allows and ratifies blatant and audacious discrimination and harassment perpetrated by TMSL law professors against Caucasians. The law students sometimes take part in creating a very hostile anti-white racist environment, following the lead of the TMSL professors and administrators. Dozens of EEOC Charges of Discrimination and discrimination lawsuits have been filed against TSU and/or TMSL administrators.

15.     Defendant James Douglas graduated from TMSL and joined the TMSL faculty in 1971. Douglas has been the TSU President and the TMSL Dean.  Over the course of nearly a half century, Texas taxpayers have paid millions of dollars to Douglas as he has created a university-wide culture of sexism, racism and harassment.

16.     In 1993, while Defendant James Douglas was the dean of the law school, white professors sued Douglas and the law school for intentional racial discrimination. The jury awarded compensatory damages, and punitive damages against Douglas in the amount of $81,000.00.  The jury found that Douglas's conduct was intentional or malicious, warranting an award of damages to punish Douglas.  The Fifth Circuit affirmed the judgment, and the United States Supreme Court declined to grant review. On information, TSU paid the punitive damages award, meaning that Texas taxpayers ultimately paid for Douglas's intentional, racist misconduct. Douglas remains an influential figure at TSU and persists in perpetrating a culture of racism and sexism. In 2015, Douglas returned to teach at TMSL after spending years in upper

administration.  Douglas became the interim dean of the law school from about September, 2016 to September, 2017.

17.    Many of the EEOC Charges filed against the law school in the past 10 years have been based on sexual harassment or sex-based discrimination and retaliation. Female professors are given more difficult or undesirable course schedules and are paid less than male professors. Male professors are given deanships, directorships, or professorships with substantial increased compensation of $20,000.00 to $40,000.00 or more per year, while females are generally passed over.  Female professors and deans have described the harassment at TMSL as persistent, "daily," intentional, concerted, "pervasive," physically aggressive, and malicious, which creates a very sexist, hostile work environment and a profoundly unprofessional atmosphere in the law school.

18.    In 2016-2017, the ABA issued censures against TMSL for violation of gender anti-discrimination accreditation standards as well as academic standards. In June, 2017, while Defendant James Douglas was the interim dean of the law school, the ABA issued to the law school a written Notice of Censure and Directed Specific Remedial Action (ABA Notice of Censure).(http://www.abajournal.com/news/article/texas_southerns_law_school_receives_aba_p ublic_censure_involving_equal_oppo). In the ABA Notice of Censure, the law school was ordered to pay a fine of $15,000.00 for its substantial and persistent non-compliance with ABA standards prohibiting gender discrimination and sexual harassment.  The ABA also required the law school to post a notice on the law school's website concerning the school's ongoing gender discrimination.  The ABA directed the law school to remedy the unequal pay based on gender. Despite facing possible revocation of ABA accreditation, Defendant Douglas, while acting as interim dean of the law school, announced in a faculty meeting that he decided that there was no

problem with gender discrimination. The law school has taken no reasonable steps to equalize the salaries of the professors, despite the ABA's specific directive to take immediate steps to equalize salaries.

19.     The ABA requires a bar passage rate of at least 75% to maintain accreditation. TMSL consistently has the lowest bar passage rate in Texas, a rate of 40% for first time bar examinees from the February 2017 bar exam, 64% for the July, 2017 bar exam, and 28% for the February, 2018 bar exam.   The pass rates of TMSL repeat bar takers were even lower. Previously, Pat Garrison, a Caucasian female, was hired to help with TMSL's bar passage rate and the rate quickly went up to over 75%, whereupon Garrison was subjected to intense harassment and forced out of her job, and sued TSU for race discrimination.[1]  The bar passage rate for TMSL graduates plummeted thereafter.

20.     The TMSL students suffer horribly as a result of the law school's discriminatory practices and very hostile environment.  The low bar passage rate is entirely avoidable, and a function of corruption, discrimination in admissions and hiring, and failure to follow industry-wide standards in many respects, including hiring unqualified professors. For example, TMSL faculty members largely fail to conduct law school examinations in accordance with the standards and practices of the legal academy.  Instead of testing by means of essay exams per industry standard, most TMSL professors test exclusively by multiple-choice exams, some of which are obtained from commercial outlines in the TMSL library, and most of which are re-used year after year, creating fertile ground for cheating.  The students are not provided the opportunity to have their legal analysis reviewed carefully, and corrected as necessary, because they are not given essay exams and the professors have no window into the law students' thought

---

[1] See Plaintiff's Second Amended Complaint, *Patricia Garrison v. Texas Southern University*, Civil Action No. H-11-2368 (S.D. Tex. August 29, 2012) (Dkt. 44).

processes, and no opportunity to correct poor analysis in the early stages of the students' law school career. Failing to examine students by essay exams is much easier for the law professors. Grading essay exams is extremely time-consuming, while grading multiple-choice exams consists of running scantrons through a machine in a matter of seconds. Some of the law professors are not capable of drafting and grading law school examinations, because they do not understand the law sufficiently well to teach it, draft quality examinations, or grade essay examinations. The law school examination process alone undermines the mission of the law school, and fails to prepare the students for the bar exam.

21.     In 2017, the ABA demanded copies of all law school exams from all professors for the past five years. Plaintiff responded immediately with an organized set of all exams, but some TMSL professors refused to release their exams, likely because they were made up of multiple choice questions obtained from commercial books and outlines, and used repeatedly over the years with no modifications.

22.     Texas taxpayers are paying millions of dollars every year for the salaries and other benefits of employment provided to certain TMSL professors and administrators who are unqualified, cannot answer simple questions in the subjects that they teach, and are unable to help the law students or further the mission of the law. Many administrative decisions at TMSL are based on race and/or gender, violate state funding statutes and anti-discrimination laws, violate TSU and TMSL policies and faculty manuals, grossly misappropriate public monies, and are ultra vires.

### B.     Plaintiff's exceptional qualifications and work ethic

23.     In 2000, Plaintiff Deana Pollard Sacks was hired by TMSL as an assistant professor of law. Plaintiff is among the most qualified and effective teachers and scholars at the

law school.  Plaintiff was in the top 10% of her law school classes at U.S.C. (J.D.) and U.C. Berkeley (LL.M.).  Plaintiff studied critical race theory and discrimination at Berkeley, published a highly respected and much-cited thesis in the Washington Law Review on unconscious racial bias as part of her LL.M. program, and is dedicated to the mission of the law school. Plaintiff provides her personal cell phone to her students so that they may reach her at night and on the weekends. Plaintiff has opened her home to students for review sessions, and has held extra review sessions for her students, without compensation, to help the students. Plaintiff has received very good teaching evaluations over the course of 18 years.

24.     From 2000 to the present, Plaintiff taught tort law, demonstrated an extraordinary work ethic, consistently published academic articles in very prestigious law journals, received good teaching evaluations, and served the public in numerous ways, including providing pro bono legal services to persons who could not afford a lawyer.  Plaintiff has written and graded torts essay examinations since 2000 and regularly meets with students for a one-on-one review of their torts essay exams and an analysis of their legal writing skills. Plaintiff has developed an expertise in tort law through tenacious study and research, and has written torts essay exams and model answers for the California State Bar, as well as multiple-choice questions and answers, at the request of the California State Bar.  Plaintiff received tenure in 2006, and was promoted to full professor in 2008.

25.     Plaintiff  has  published  numerous  law  review  articles  that  have  received extraordinary scholarly recognition. Plaintiff has been recognized as in the top 10% of scholars in the Social Science Research Network, a worldwide, multidisciplinary scholarly network. She has received numerous congratulatory notices from ResearchGate that she had the "most read

contributions from your department" in that period, i.e., Plaintiff's work is being utilized by other professors, courts and legislatures at a very high level.

26.    Plaintiff's scholarship has been cited by the United States Supreme Court, the Sixth Circuit, state supreme courts, and numerous other courts, legislators, and famous scholars. Plaintiff's published scholarship has landed her an offer to publish a book with professors from Harvard and an invitation to speak at Harvard Law School. Plaintiff has appeared on CSPAN, the Fox News Channel, The New England Cable News Network, and several other broadcast stations as a result of her published work. Plaintiff is among the most qualified professors at TMSL, and no other professor at the law school has achieved industry-wide scholarly recognition comparable to Plaintiff.

### C.    TMSL's unequal pay practices and pervasive discrimination

27.    Plaintiff has been subjected to unfair work conditions and unequal compensation, because she is female and Caucasian.  Plaintiff's base salary and total compensation are less than that of other law school professors who are black and/or male.  The black and/or male professors make significantly more money than Plaintiff despite having inferior academic credentials and despite inferior performance as law professors, based on objective criteria, industry standards, TSU and TMSL policy manual provisions, and professional recognition in the legal academy and at large. The disparity in compensation violates Title VII,  the Equal Pay Act, and other clearly-established state and federal law.

28.    In addition, the state funding statutes and TSU and TMSL faculty manuals set forth specific merit-based criteria for the purpose of avoiding arbitrary and capricious compensation decisions, and to comply with due process. The provisions contained in the state statutes and faculty manuals are consistent with longstanding, industry-wide standards and

professors' expectations of fair and merit-based compensation for superior scholarly performance in the legal academy.  The Defendants have repeatedly and blatantly disregarded the objective criteria contained in the TSU and TMSL faculty manuals, and have awarded compensation based on race, gender, and/or sexual liaisons, as opposed to the merit-based criteria set forth in the faculty manuals and required by law. For example, soon after law professor Docia Rudley's employment was set for termination due to a lack of scholarly achievement, her husband became the TSU President, and Rudley was retained by the law school and given a raise such that her base salary exceeded the Plaintiff's base salary, despite the fact that Plaintiff achieved tenure.

29.     After Douglas returned to teach at the law school, Plaintiff suffered increased adverse employment decisions resulting in significant lost compensation, including revocation of her title.  Plaintiff has also been subjected to intense harassment.

### D.     Hostile work environment, continuing violations

30.     The law school environment is intensely hostile, and the hostile environment is grounded in racial and gender animus.  On many occasions, Plaintiff has been screamed at, falsely accused of misconduct, physically hit or shoved, assaulted, and slandered by certain non-white or male employees at the law school.  Some of the harassment and discrimination has been perpetrated while the Individual Defendants acted in their official capacities, and some of it has been perpetrated while the Individual Defendants acted in their personal capacities. Some of the ongoing and continuous acts of harassment occurred less than 300 days before Plaintiff filed her EEOC Charge of Discrimination on February 1, 2017 or Amended Charge of Discrimination on May 11, 2018.

a.      Defendants Ana Otero and April Walker (a TMSL graduate) are friends and have repeatedly attempted to interfere with Plaintiff's career by, inter alia, voting against her for tenure and promotions based on racial animus as opposed to merit, making false accusations against Plaintiff, screaming at plaintiff, soliciting help from students to harass Plaintiff and interfere with her job, and physically aggressing against Plaintiff, including slamming a door into Plaintiff's body, punching a handbag off of Plaintiff's shoulder, and grabbing Plaintiff's arm.

b.      Defendants Walker and Colon-Navarro have repeatedly made racist or other inappropriate statements manifesting hostility toward white people, women, and/or Plaintiff in particular. Defendant Walker is known to use the phrase "white bitch" when referring to white women, is known for loud, unprofessional outbursts in the law school, and has screamed racial comments in the law school, including the statement, "What's so special about her (pointing at Plaintiff), because she's white?!" For years, Defendant Colon-Navarro had a sign on his office door that said, "Parking for Puerto Ricans Only," and has referred to Caucasians as "f**king whites" at the law school, in front of students. Defendant Colon-Navarro, a married man, has presented a photograph of an attractive pole dancer (stripper) to persons in the law school, makes people feel very uncomfortable by constantly discussing women's bodies and stating how "good looking" he was as a younger man. All of this conduct was unwelcomed and caused Plaintiff to feel very uncomfortable.

c.      In the summer of 2016, soon after Plaintiff made a race-based complaint concerning her title revocation, Defendants Otero, Anga, and Walker, along with Otero's student assistant, voted to recommend a finding of discrimination against Plaintiff as

committee members of the Academic Standards Committee, of which Otero was the chair.  There was no evidence to support the recommendation, and the dean at that time, Dan Holley, was unable to support the recommendation, based on "no evidence" to support a finding that Plaintiff had discriminated against anyone.  Still, the proceeding was very distressing and cost Plaintiff many hours defending herself in the kangaroo proceeding.

d.     Defendants Anga (a TMSL graduate) and Colon-Navarro have repeatedly screamed at Plaintiff in faculty meetings and raised their voices over Plaintiff when Plaintiff tried to contribute to faculty discussions. Colon-Navarro has tested his students by multiple choice exams for more than 25 years and knows that Plaintiff believes that essay exam testing is necessary to benefit the TMSL students. Because she is a Caucasian women with excellent academic and scholarly achievements, Defendant Colon-Navarro has made numerous false and derogatory statements about Plaintiff to numerous students in an attempt to discredit Plaintiff, including a false statement that Plaintiff was fired from a prior teaching position.

e.     McKen Carrington, former dean of the law school, and Darnel Weeden, former associate dean of the law school, have repeatedly taken action to deprive Plaintiff of her employment benefits and fair compensation. Both have interfered with the sabbatical process for the purpose of depriving Plaintiff of benefits of employment. McKen Carrington has yelled at Plaintiff repeatedly, and numerous EEOC charges have been lodged against McKen Carrington.

31.     Cumulatively, the many ongoing acts of harassment have created a very hostile work environment based on race and gender. The harassment has been continuing and has been

perpetrated by the Defendants in a concerted, organized and intentional fashion. The harassment is grounded in gender and racial animus, and permeates every aspect of the employment setting, making it very difficult for Plaintiff to do her job, and making it impossible for Plaintiff to perform at her highest level, harming the TMSL students and the law school mission in the process.

32. The Defendants' harassing conduct has forced Plaintiff to spend hundreds of hours over the course of 18 years defending herself against false charges, documenting other employees' harassment, obtaining witness statements, and interfacing with TSU Human Resources and the law school administration to seek relief from the ongoing harassment. Human Resources has not conducted a reasonable investigation or taken remedial action despite repeated complaints. Instead, Human Resources summarily supports the harassing parties based on racial bias or gender bias.

33. Other Caucasian and female professors have suffered discrimination and harassment as well. Many EEOC charges have been filed against Texas Southern University and the Thurgood Marshall School of Law. The Human Resources Department at Texas Southern University is well-aware of the racial and gender-based discrimination and harassment, but has never undertaken a serious investigation into the discrimination and harassment or engaged any corrective action, despite receiving many complaints.

**E.** **Adverse Employment Decisions**

34. Repeatedly, Plaintiff requested an administrative position, additional responsibilities relative to preparing the students to take the bar exam, or a directorship with the law school. These positions and responsibilities come with enhanced compensation and prestige in the academic community. Despite being well-qualified, all of Plaintiff's requests have been

denied or ignored. At the same time, the law school has promoted numerous non-white professors, male and female, to dean positions or director positions, with significant additional salary. Despite Plaintiff's repeated requests to help with bar preparation, the law school refused to allow Plaintiff to help and instead provided additional compensation for non-white and male professors to conduct bar review classes, despite the fact that some were unqualified to teach the bar review classes.

35.    Titled professorships and chaired positions are provided to professors who demonstrate extraordinary scholarship and receive scholarly recognition in the academies. Titled professorships are distributed based predominantly as a reward for published work and scholarly recognition, based on state law, official TSU and TMSL policies, and industry-wide customs, rules, and standards. The TSU and TMSL faculty manuals and other documents set forth specific standards for awards of titled professorships, focusing on the quality of scholarship and objective criteria for measuring the quality of scholarship, such as rank of publishing journal and the number courts and legislatures that have cited the professor's published work.  The specific standards are set forth in the faculty manuals to avoid arbitrary or capricious awards of titled professorships and to assure that the lucrative titles are awarded based on merit, to comport with due process, and to avoid arbitrary, discriminatory, and non-meritorious awards. Plaintiff had a reasonable expectation of a title, increased compensation, and retention of her title, based on her extraordinary work ethic and prestigious publication record.

36.    In 2011, Plaintiff was awarded the Roberson King Professor of Law title, effective 2011-2015. Soon thereafter, the harassment perpetrated by Defendants Walker and Otero intensified, and both Defendants screamed at Plaintiff and physically aggressed against Plaintiff, both making aggressive physical contact with Plaintiff's body.

37.     Plaintiff formally complained about Defendants Walker and Otero to Human Resources and provided Human Resources with a list of witnesses who witnessed some of the harassment.   Plaintiff provided Human Resources with a detailed statement by a percipient witness, but Human Resources did not conduct a reasonable investigation or contact critical witnesses, and instead denied Plaintiff's allegations or passed the matter back to the law school, taking no reasonable corrective action.

38.     As a result of the harassment perpetrated by Defendants Walker and Otero, among others, Plaintiff took a medical leave of absence between 2013 and 2014, which caused her to lose approximately $100,000.00 in compensation and benefits.   In addition, TSU did not pay Plaintiff her Roberson King title funds in 2014 in the amount of $20,000.00 during the leave of absence necessitated by extreme, ongoing harassment and physical aggression by non-white law professors.   Plaintiff made a request for the unpaid Roberson King funds to the dean, Dan Holley, as per the Holley's response to Plaintiff's complaint about non-payment, but the request was ignored entirely.

39.     TMSL has a pattern of not paying white employees monies earned, forcing them to jump through hoops to get paid, or refusing to pay them altogether, and have similarly denied monies owed to Pat Garrison and Walt Champion, both of whom are Caucasian. Despite receiving the Roberson King title, due to the misconduct of the Defendants and TSU/TMSL's failure to respond or to take corrective action for the numerous harassing actions against her, Plaintiff suffered a net loss in employment compensation during the period that she held the Roberson King title.

40.     In 2015, Defendant James Douglas returned to teach at the law school, and Plaintiff was subjected to very hostile treatment.   Plaintiff's Roberson King title was revoked

because she is Caucasian, in contradiction of the specific criteria and substantive and procedural due process requirements set forth in the faculty manuals, and in violation of clearly-established state and federal law, which require merit-based, non-racial decisions. A sham faculty vote was held on a date on which many professors were absent near the holidays, but professors with TMSL law degrees were present. Three titles were available, and there were four black applicants and two white applicants. Plaintiff's application was complete and she met the criteria specified in the faculty manuals far more than other applicants.  The other applicants did not provide important objective data concerning the quality of their scholarship, as requested as part of the official application process, because the data, including the low rank of the journals that published their work and the lack of citations by courts and legislatures, proved that their scholarship was objectively not of a high quality, rendering them unworthy of a title.   However, the portion of the faculty at the meeting voted to give all three titles to black professors with inferior scholarship and incomplete/insufficient application materials, two of whom have law degrees from TMSL. The decision was based on race, not merit, and violates the law.

41.     In response to the racially-motivated vote to give titles to less-deserving black professors and deny the same to deserving white professors, Plaintiff and a law professor from the University of Alabama wrote to the dean, requesting that he disregard the racially-motivated vote of a skewed portion of the faculty and allow Plaintiff to keep her well-deserved title, which the dean had the power to do.  Plaintiff requested an outside review, which could have been conducted per the TMSL policy manual, so that the title awards could be based on merit, as opposed to race.  She pointed out that the applicants who were awarded titles objectively did not deserve them and/or failed even to comply with the application guidelines distributed by TMSL for the title application process. By letter dated May 19, 2016, the dean informed Plaintiff that he

would rubber-stamp the faculty recommendation and award the titles to the three black law professors despite the evidence that the vote was racially motivated, not merit-based, and not consistent with the requirements for titles set forth in the TSU and TMSL faculty manuals.

42.    The following year, soon after Plaintiff filed her EEOC Charge of Discrimination, Plaintiff was denied a title again.  The title was given to a black male professor over Plaintiff, despite Plaintiff's far superior scholarship record, superior scholarly recognition in the legal academy and worldwide, and superior title application materials. Again, the decision was based on race and gender, not merit.

43.    Between 2015 and 2018, Plaintiff repeatedly asked to be considered for an administrative position, to help with bar preparation, and to direct a program, like many of her colleagues with far inferior academic qualifications and performance records.  Plaintiff was denied every time while non-white and male colleagues with inferior credentials and work product were given lucrative positions in the dean's office or directing programs.  Despite Plaintiff's repeated requests to teach bar preparation, with additional income, bar review sessions were given to black or male professors who do not even teach the Plaintiff's subject of expertise (torts), who have never written questions or model answers for a real bar exam (Plaintiff has), and presented invalid torts questions to students, then could not answer students' questions about torts. Plaintiff conducted lengthy bar preparation classes in the evenings, nonetheless, without compensation, while her less qualified male and black colleagues received compensation for attempting to teach subjects that they do not understand, causing distress to law students, who frantically called Plaintiff for help. As usual, the law school made race and gender-based compensation decisions contrary to merit and to the detriment of the law students, in violation of the law.

F.    **Continuing Harassment And Retaliation**

44.    On or about September 15, 2016, Plaintiff personally delivered to TSU Human Resources and the TSU President Austin Lane's office a 10 page detailed complaint of unequal pay, discrimination, and harassment based on face and gender, including 163 pages of exhibits. Plaintiff received no response to this detailed complaint.

45.    Near the end of the summer of 2016, Plaintiff received a call from Defendant Otero, informing Plaintiff that Otero was the chair of the Academic Standards Committee, and that a student had lodged a charge of discrimination against Plaintiff.  No student had lodged a complaint against Plaintiff previously, in 16 years of teaching at five different law schools.  The student was known to the administration to have numerous problems, including academic and credibility problems.  On information, Defendant Colon-Navarro instructed the student to lodge a discrimination complaint against Plaintiff.  Defendants Otero, Walker and Anga, along with Otero's student assistant (Andrea Curtiss), made up a majority of the Academic Standards Committee. Plaintiff requested information concerning the student, to use in her defense of the false charge of discrimination, and Otero failed to give it to her.   Plaintiff spent hours documenting the reasons why the student received a "D" grade in Plaintiff's torts, which grade was assigned by the law school, not Plaintiff.  All of Plaintiff's exams are blind graded, and Plaintiff showed that the student failed a year-end comprehensive exam that was worth 50% of the overall grade and was written and graded primarily by other professors.   During the committee meeting in which Plaintiff had to defend herself against the absurd discrimination complaint, Anga and Curtiss were openly hostile to Plaintiff, Curtiss shouted at plaintiff, and both Anga and Curtiss rudely informed Plaintiff that they were in control of her fate relative to the student's discrimination complaint, not Plaintiff. Despite no evidence of discrimination, Defendants Otero, Walker, Anga and Curtiss recommended a finding of discrimination against

Plaintiff.    The dean refused to support the committee's recommendation, based on "no evidence" that Plaintiff discriminated against the student.    The student later attempted to "transfer" to another law school by submitting false application materials to another law school. The student claimed to have passed his first year of law school at TMSL, apparently submitted a falsified transcript, and was caught by the Law School Admission Council.  The student then returned to TMSL and attended classes for a day or two, refusing to acknowledge that he had failed out of law school.

46.    On or about January 26, 2017, Plaintiff visited the EEOC office in Houston and was treated with hostility by a woman later identified as a TMSL graduate.  On January 27, 2017, former law school dean McKen Carrington yelled at Plaintiff in the law school lounge simply because Plaintiff suggested that Rebecca Stewart, a well-qualified white professor with a Harvard law degree, teach a first year class to benefit the law students relative to a subject tested on the bar exam.  Carrington raised his voice and told Plaintiff that she was not privy to the contract with Stewart, and when Plaintiff tried to walk away, he yelled at her not to leave the lounge.  Later that day, Defendant Douglas, who was the interim dean at that time, called Plaintiff into his office to inform her that a "complaint" had been lodged against her by Defendants Otero and Walker.  It was obvious to Plaintiff that people at TMSL were aware that she had visited the EEOC office the day prior and was almost instantly subject to retaliation and harassment.

47.    On February 1, 2017 Plaintiff filed a Charge of Discrimination with the EEOC based on race, sex, retaliation, and unequal pay. The Charge of Discrimination was filed within 300 days of the adverse employment decision to deny Plaintiff a title and also within 300 days of some acts of harassment that had a cumulative effect of creating a very hostile work environment

based on race and gender.  Thereafter, the harassment intensified, and Plaintiff was subjected to increased harassment. The retaliatory harassment includes:

a.   In or about March of 2017, Plaintiff was again denied a title, and it was given to a black male who was far less deserving.

b.   Plaintiff was denied increased responsibilities with increased pay, such as bar preparation and directing a civil rights program, despite other professors receiving extra pay for similar activities.

c.   On April 17, 2017, Defendant Anga (a TMSL graduate) sat in her car near Plaintiff's reserved parking space, then pulled into Plaintiff's reserved parking space just as Plaintiff approached her parking space.  Anga got out of her car, rudely told Plaintiff that Plaintiff is undeserving of a parking space, and physically charged at Plaintiff when Plaintiff asked her to move her car. Anga got within 10 inches of Plaintiff's face and shouted in an angry manner, "What are you going to do about it!"  Defendant Anga's behavior was personal and she was not acting in an official capacity or in the course and scope of her job at TMSL.  Plaintiff had made a series of complaints about not being able to park in her parking space at school and being late to class as a result, Anga was aware of the problem, and Anga intentionally and maliciously caused Plaintiff to be late to her class, again. Defendant Anga's conduct was in the view of security cameras, but TSU/TMSL has failed to supply the footage after repeated requests, covering up Anga's misconduct. In addition, Plaintiff went to TSU Human Resources the same day of the incident to complain, and then submitted a written complaint.  TSU did not conduct a reasonable investigation or take corrective action.

d.      On October 27, 2017, Plaintiff attended a Gender Equity Committee meeting at the law school that she was invited to attend, as a female with a gender discrimination concern. A male professor made derogatory statements about Plaintiff's motive in attending the meeting and stated that he was concerned that Plaintiff came to the meeting for her own agenda, i.e., in furtherance of her EEOC case.  Plaintiff felt reprimanded and embarrassed by the statements, made in front of numerous colleagues.

e.      In October, 2017, Plaintiff's law students informed her that there was a "conspiracy" among certain students to give Plaintiff unfair and derogatory teaching evaluations, to "put Professor Pollard in her place." Plaintiff's assistant at that time (who Plaintiff had requested to be replaced due to the assistant's very rude and inappropriate behavior toward Plaintiff) conducted the evaluation and made statements derogatory of Plaintiff at the time of the evaluations. Upon information, she did so on the direction of Individual Defendants. Then, in the spring of 2018, another law student expressed concern that Plaintiff's evaluations would not be fair because someone sent out a global "free pizza" text message soon after the students began filling out the Plaintiff's teaching evaluations, such that students left to get free pizza.

f.      On November 6, 2017, Plaintiff attended a faculty meeting concerning professors who taught first year subjects that were tested on the bar exam.  The prior year, the faculty voted to examine the students by essay exam, and yet only Plaintiff and one or two other professors examined students by essay exams.  Plaintiff mentioned the need for proper essay exam testing, and Defendants Colon-Navarro and Anga raised their voices over Plaintiff such that she was not allowed to speak, even when the chair recognized Plaintiff as the proper speaker.   Colon-Navarro carried on, reprimanding

Plaintiff for her valid comments, and continued his loud, emotional outburst directed at Plaintiff for such a long period that Plaintiff finally was forced to leave the room. This behavior, in conjunction with other rampant harassment due to Plaintiff's race and gender has caused significant emotional distress.

      g.     In November, 2017, Larry Weeden interfered with Plaintiff's application for a sabbatical leave of absence to finish her book.  Plaintiff's sabbatical application was the only completed application with a specific "plan" for a substantial publication resulting from the sabbatical, as required.  During committee proceedings to recommend a sabbatical leave, Weeden raised his voice over the committee chair, demanded that students vote (contrary to the state funding statute), and suggested that the committee misinform the dean about the outcome of the committee vote. Plaintiff spent many hours over several weeks pulling the funding statute and writing numerous emails to the dean and other administrators to convince them that the vote was improper, and Plaintiff was the qualified candidate for a sabbatical.

      h.     On April 11, 2018, Plaintiff organized a long review session to help the students prepare for the torts portion of the bar exam. Plaintiff sent out notices to the IT Department that she would need certain technology in the room to conduct the review session and was assured that the technology was in the room, as it had been for months. Then, either the day of the review session or the prior evening, someone removed the equipment from the room, such that it was not available during Plaintiff's review session. While on its own seemingly trivial, this is yet one in the multitude of examples of the rampant harassment and job interference that Plaintiff is subject to at TMLS on a regular, ongoing basis, based upon her race and gender.

48.     On May 11, 2018, Plaintiff filed an Amended Charge of Discrimination with the EEOC, to add facts concerning ongoing harassment and retaliation since the original EEOC Charge of Discrimination.

49.     The Defendants' conduct has been concerted, intentional, and malicious, based on racial and gender animus.   Each Defendant is jointly and severally liable for each other Defendant's misconduct, and each is responsible for all of Plaintiff's injuries and losses caused by the misconduct.

50.     Plaintiff has made a number of complaints of discrimination, harassment, physical aggression, and retaliation to TSU Human Resources, as well as the law school and university administration, and no reasonable investigation or corrective action has been taken.   Instead, TSU has ratified the unlawful conduct.

## IV.   CAUSES OF ACTION

### COUNT 1

### Title VII Race Discrimination against TSU

51.     The preceding paragraphs are fully incorporated as if set forth fully herein.

52.     The Defendant TSU's conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment on the basis of race.

53.     Plaintiff is a racial minority at Texas Southern University. She is more qualified than many of the non-white professors, yet has a lower base salary. Plaintiff also has been denied lucrative positions, such as deanships and directorships, and had her earned title revoked, while non-white professors were treated much more favorably, and received deanships, titles and directorships, despite being less qualified. Race was a motivating factor in Defendant's adverse treatment of Plaintiff, and Plaintiff has suffered damages and other injury as a result.

54.     Plaintiff timely met all filing prerequisites and filed this lawsuit timely.

### COUNT 2

### Title VII Gender Discrimination against TSU

55.     The preceding paragraphs are fully incorporated as if set forth fully herein.

56.      Defendant TSU's conduct violates Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment on the basis of sex.

57.     Plaintiff is female. She is more qualified than many of the male professors, yet has a lower base salary. Plaintiff also has been denied lucrative positions, such as deanships and directorships, and had her title revoked, while male professors were treated much more favorably, and received deanships, titles and directorships, despite being less qualified. Gender

was a motivating factor in Defendant's adverse treatment of Plaintiff, and Plaintiff has suffered damages and other injury as a result.

58.     Plaintiff timely met all filing prerequisites and filed this lawsuit timely.

## COUNT 3

### Title VII Hostile Work Environment and Retaliation against TSU

59.     The preceding paragraphs are fully incorporated as if set forth fully herein.

60.     Defendant TSU's conduct violates Title VII of the Civil Rights Act of 1964, which prohibits a hostile and abusive work environment in employment settings.  Title VII also prohibits retaliation for engaging in a protected activity such as complaining about racial and sexual harassment.

61.     Plaintiff is a racial minority at TSU and female. The law school is a hotbed of pervasive and severe racism and sexism.  Plaintiff has been subjected to racist, anti-white statements, and comments concerning physical appearance and sexuality, on a regular and ongoing basis. The comments were unwelcomed and very offensive, Plaintiff perceived the environment to be very abusive and hostile, as any reasonable person would.

62.     The anti-white sentiment is constant, and so prevalent and accepted/ratified by TSU and TMSL that one prominent TMSL student and Chief of Staff for a TMSL graduate Texas Legislator wrote on Facebook: **"lmao!!! You know I got go out with a BANG!!! I'm not letting these whites make it …[shouting icon] they gonna [sic] respect the Negroes of the TMSL."  The Facebook response: "my point exactly!!!!"** The Facebook post went viral at TSU, yet a few months later, the student was featured in an edition of the law school's periodical, Thurgood Today. TMSL ratified and applauded the blatant racist and hostile Facebook post, which accurately reflects the anti-white sentiment at TMSL. Plaintiff was told

point blank that certain professors do not want her in the law school because she is white, and that TMSL is "their" law school (meaning the non-white professor's law school). Plaintiff has been singled out for a great variety of negative treatments, as set forth herein above, because she is Caucasian and female.

63.     Colon-Navarro's conduct in showing a photo of a stripper around the law school and constantly making comments about women's physical appearance is unwelcomed and harassing.

64.     The conduct is severe and pervasive to the point that it alters the conditions of Plaintiff's employment, permeates every aspect of the Plaintiff's job including technology necessary for teaching, and makes it very difficult for Plaintiff to get the simplest of tasks accomplished.  Plaintiff is shouted down in faculty meetings, and not allowed to participate in faculty governance or solutions to the very serious ABA crisis, among many other hostile and harassing conduct perpetrated by non-white or male professors. The harassment is motivated by race and gender, and is sufficiently severe to create an abusive and very hostile work environment by any reasonable person's standards.

65.     Numerous sexual harassment, gender-based, and race-based complaints have been lodged against the law school, and TSU and TMSL have taken no reasonable corrective action for many years. Plaintiff's treatment is par for the course. She has engaged in protected activity by lodging EEOC Charges and other complaints about the hostile work environment (as have numerous others), and subsequently suffered additional adverse employment decisions, and was screamed at inside of the law school repeatedly by Defendants Colon-Navarro, Anga, and others after filing her original EEOC Charge.  Plaintiff was denied a title again after filing her EEOC Charge, was denied a position as a director, and was denied the opportunity to help with bar

preparation, all of which had adverse financial and career advancement consequences for Plaintiff. The hostile and abusive environment that existed prior to Plaintiff's original EEOC Charge intensified after Plaintiff filed her EEOC Charge, and Plaintiff filed an amended EEOC Charge and additional complaint to TSU Human Resources as a result.

66.     Plaintiff has suffered distress and other damages as a result of the hostile and abusive work environment and retaliation in response to her EEOC Charges and complaints of discrimination and harassment.

67.     Plaintiff timely met all filing prerequisites and filed this lawsuit timely.

## COUNT 4

### Equal Pay Act Violation against TSU

68.     The preceding paragraphs are fully incorporated as if set forth fully herein.

69.     Defendant employs Plaintiff and males in jobs requiring substantially equal skill, effort, and responsibility.

70.     The males and Plaintiff perform similar jobs under similar working conditions.

71.     Plaintiff is paid less than the male employees doing substantially equal work.

72.     Defendant is well-aware of its long history of gender-based discrimination policies, and Defendant's conduct in paying Plaintiff less than males has been intentional and willful.

73.     Plaintiff filed complaints and EEOC Charges, asserting rights under the Equal Pay Act, and was subsequently subjected to adverse action as a result of her complaints, As a result of Defendant's discriminatory gender-based pay differences, Plaintiff has suffered damages and injury.

## COUNT 5

**Violation of 42 U.S.C. Section 1981-1985 through Section 1983 against**

**Individual Defendants**

74.     The preceding paragraphs are fully incorporated as if set forth fully herein.

75.     Pursuant to 42 U.S.C. Section 1983, Plaintiff may bring a claim for damages and injunctive relief for Individual Defendants' violation of rights secured by the Constitution or federal law.   42 U.S.C. Section 1981 is a federal law that prohibits racial discrimination, harassment, and retaliation with respect to the making, performance, modification and termination of contracts, and the benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. Section 1985 is a federal law that prohibits conspiracy to deprive a person of equal protection of the laws. Plaintiff has the right to be free from racial discrimination, harassment and retaliation on the basis of her race, and Individual Defendants have violated this right, repeatedly. Individual Defendants have intentionally and maliciously and in concert with each other deprived Plaintiff of benefits of employment, violated TSU's own faculty manuals that set forth due process for awarding benefits of employment, discriminated against her based on her race and gender and harassed Plaintiff and retaliated against her for complaining about it, as set forth herein above.

76.     As a result of Individual Defendants' violation of Plaintiff's federal rights, she has suffered lost pay and benefits, distress, and other injury.

## V.     CONDITIONS PRECEDENT

77.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## VI.   DEMAND FOR JURY TRIAL

78.     Plaintiff, DEANA POLLARD SACKS, asserts her rights under the Seventh Amendment to the U.S. Constitution, and other federal law, and demands in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VII.   CONCLUSION AND PRAYER

WHEREFORE, Plaintiff prays that as follows:

a)      For an award of damages to compensate Plaintiff for her economic losses, including back pay, lost wages, and other lost benefits of employment, and for emotional distress and physical discomfort;

b)      For an award of punitive damages;

c)      For injunctive relief compelling Plaintiff to have a title restored or for an increased base pay in the same amount;

d)      For injunctive relief providing Plaintiff with fair and equal compensation in the future;

e)      For injunctive relief prohibiting unlawful conduct in the future;

f)      For an award of pre-judgment interest on the amounts owed at the maximum rate allowed by law;

g)      For an award of costs of this action, together with reasonable attorneys' fees and expert witness fees;

h)      For an award of post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

i)      For such other and further relief as the court deems just and proper.

Respectfully submitted,

_____ **/s/ David J. Sacks** _____

DAVID J. SACKS
Attorney in Charge
SACKS LAW FIRM
State Bar No. 17505700
Federal Bar No. 6095
2323 S. Shepherd, Suite 825
Houston, TX 77019
Telephone: 713-863-8400
Facsimile: 713-863-0502
david@sackslawfirm.com